IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SHANE LEE GLENN,

          Plaintiff,

v.                                     CIVIL ACTION NO. 3:14-25969

CAROLYN W. COLVIN,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

This action seeks review of the Social Security Commissioner's final decision denying the Plaintiff's ("Claimant's") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits. Pursuant to standing orders issued under 28 U.S.C. § 636(b)(1)(B), this action was referred to United States Magistrate Judge Omar J. Aboulhosn for proposed findings of fact and recommendation for disposition ("PF&R"). ECF Nos. 4, 14. The Magistrate Judge submitted proposed findings and recommended that Claimant's Motion for Judgment on the Pleadings be granted, that the like Motion of Defendant be denied, the decision of the Commissioner be reversed, and that this matter be remanded pursuant to 42 U.S.C. 405(g) for further administrative proceedings regarding Claimant's impairments at step three of the sequential analysis. ECF No. 15. Defendant Commissioner now objects to the proposed findings. ECF No. 16. For the reasons set forth below, the Court grants Commissioner's objection (ECF No. 16) and accepts and incorporates in part the PF&R of the Magistrate Judge to the extent it is not inconsistent with this opinion (ECF No. 15). Therefore, the Court grants the Commissioner's

Motion for Judgment on the Pleadings (ECF No. 13), denies the like Motion of Claimant (ECF No. 11), and dismisses with prejudice Claimant's Complaint (ECF No. 2).

## I.     Procedural History

Claimant filed application for SSI and DIB on May 3, 2011 and February 14, 2012, respectively, alleging disability as of May 10, 2006, due to back pain, degenerative disc disease, bulging discs, and pain in the legs and shoulders. Tr. at 18, 74–80, 91–96, 98. The claims were denied initially and upon reconsideration. Tr. at 30–31, 56–58, 61–63, 69–71. On June 11, 2012 Claimant requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at 376–95. By decision dated January 23, 2014, the ALJ determined that Claimant was not entitled to benefits. Tr. at 18–28. The ALJ's decision became the final decision of the Commissioner on July 29, 2014, when the Appeals Council denied Claimant's request for review. Tr. at 5–8.

Claimant filed the present action (ECF No. 2) seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g) on September 18, 2014. The Commissioner subsequently filed an Answer (ECF No. 8) opposing Claimant's Complaint. Both parties moved for judgment on the pleadings. ECF Nos. 11, 13. This action was referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge issued his PF&R on February 9, 2016, recommending that Claimant's Motion for Judgment on the Pleadings be granted, that the Commissioner's Motion for Judgment on the Pleadings be denied, the final decision of the Commissioner be reversed, and this case be remanded for further proceedings regarding Claimant's impairments at step three of the sequential analysis. ECF No. 15. Defendant Commissioner filed a timely objection to the PF&R. ECF No. 16.

## II.     Standard of Review

This Court must "make a de novo determination of those portions of the . . . [Magistrate Judge's] proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). In contrast, the scope of this Court's review of the Commissioner's decision is narrow. This Court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing 42 U.S.C. § 405(g), which states, in part, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .") (other citations omitted), *superseded on other grounds,* 20 C.F.R. § 416.927(d)(2); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (also citing 42 U.S.C. § 405(g), among other authorities). "Substantial evidence" is defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)); *see also Craig*, 76 F.3d at 589.

The ALJ, not the court, makes findings of fact and credibility determinations and resolves evidentiary conflicts. *Hays*, 907 F.2d at 1456. "'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner]'s designate, the ALJ).'" *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987)). "The issue before [this Court], therefore, is not whether [Claimant] is disabled, but whether the [ALJ]'s finding that [he] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* (citing *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987)). This Court is required to

3

"uphold the [Commissioner]'s decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted).

### III. Objection

The PF&R recommends remanding this case on a single issue, specifically for the ALJ to evaluate whether Claimant met Listing 1.07 of the Commissioner's Listings of impairments.[1] ECF No. 15, at 18, 22. The Magistrate Judge found that the ALJ failed to consider Claimant's left wrist impairment under Listing 1.07 and whether Claimant "was under continued surgical management for the condition directed toward restoration." *Id.* Defendant objects to this, arguing that ALJ explicitly referenced and considered Section 1.00 of the Listings and that Listing 1.07 cannot be satisfied when a claimant has functional use of the upper extremity. ECF No. 16, at 3, 6. The Court agrees with Defendant Commissioner. Although the ALJ did not directly address Listing 1.07, the

---

[1] With regard to this issue, the Magistrate Judge held:

> Claimant contends however, that due to the x-ray findings of a non-united ulnar styloid fracture, the ALJ should have considered his left wrist impairment under Listing 1.07, which is satisfied when there is a fracture of an upper extremity with non-union of a fracture of the shaft of the humerus, radius, or ulnar, 'under continuing surgical management, as defined in 1.00M, directed toward restoration of functional use of the extremity, and such function was not restored or expected to be restored within 112 months of onset.' Section 1.00M defines continued surgical management as 'surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part.' This section further indicated that such procedures or treatment may include post-surgical procedures, surgical complication, infections, or other medical complication that delay the attainment of maximum benefit from therapy.
>
> Under 1.07, the x-rays demonstrate a non-united ulnar styloid fracture. The issue therefore, is whether Claimant was under continued surgical management for the condition directed toward restoration. In view of the ALJ's failure to consider the Claimant's left wrist impairment under this Listing, the undersigned finds that the matter must be remanded for further consideration under Listing 1.07.

ECF No. 15, at 18–19 (internal citations omitted).

ALJ did discuss Listing 1.00 in general (while referencing Listing 1.02)[2] and found that Claimant did not satisfy this Listing with regards to his left wrist impairment. Furthermore, any 'error' the ALJ made in not directly addressing Listing 1.07 is harmless as the evidence clearly indicates that Claimant has functional use of his left wrist. The PF&R seems to have overlooked that the restoration sought under Listing 1.07 does not relate to restoration of the bone itself, but rather restoration of "functional use of the extremity."[3] *See Workman v. Astrue*, No. 10-907, 2011 WL 4055164, at *3 (W.D. Pa Sept. 12, 2011) ("[A]lthough an X-ray taken in April 2008, showed 'an old nonunited fracture in the region of [her] right ulnar styloid', the medical evidence does not indicate that she was under continuing surgical management or that she had a loss of functional use of her right extremity, both of which are required to meet or equal listing 1.07."). Here, as will be discussed infra, Claimant has functional use of his extremity. Therefore, remanding this case back to the ALJ, without any evidence that Claimant lacks functional use of his left wrist, would be inefficient and unnecessary.

First, the regulations require the ALJ to consider each impairment as to whether it meets or equals a Listing. *See* 20 C.F.R. § 416.920. Here, the Court finds that the ALJ did sufficiently consider Claimant's left wrist impairment as to whether it meets a Listing, even if the ALJ did not explicitly reject Listing 1.07 by name. Specifically, the ALJ found:

> With regard to Section 1.00, the residual impairment to the left arm following the claimant's 2006 wrist fracture and tendon repair does not meet the manipulative deficits required for Listing 1.02. An x-ray of the wrist showed excellent signs of healing. Mr. Glenn has normal grip strength bilaterally and normal range of motion in the wrists. Dr. Compton noted intact function of all the tendons going to each digit and thumb.

---

[2] Claimant does not satisfy Listing 1.07 for the same reasons the ALJ found that Claimant was not impaired under Listing 1.02.
[3] In other words, lack of functional use of Claimant's left wrist is a requisite to finding an impairment under Listing 1.07.

5

Tr. 22. Therefore, although the ALJ did not reference Listing 1.07, he did explicitly reference Section 1.00 which includes all of the musculoskeletal listings. Additionally, the ALJ found that Claimant did not "meet the manipulative deficits required for Listing 1.02." *Id.* Those same manipulative criteria required to meet Listing 1.02 are the same as those required for a determination of impairment under Listing 1.07. Therefore, although the ALJ did not explicitly reference Listing 1.07, Claimant's wrist impairment was considered by the ALJ and the ALJ's decision to deny benefits to Claimant regarding his alleged disability is supported by substantial evidence.[4]

Next, even if the ALJ fell short on articulation regarding Listing 1.07, this 'error' would be harmless because the evidence refutes the applicability of the Listing. *See* S*purlock v. Astrue*, No. 3:12-2062, 2013 WL 841474, at *22 (S.D. W. Va. Jan. 28, 2013)("If the ALJ did err by failing to more fully explain his determination at Step 3 of the sequential process, that error was harmless because nothing in the record supports a finding that Claimant's affective disorder met Paragraph C criteria."). There is substantial evidence of record to indicate that Claimant has functional use of his left wrist, despite the finding of a non-united ulnar styloid fracture. The findings of the

---

[4] Claimant argues that under Fourth Circuit precedent, this case must be remanded "for additional investigation and explanation of the ALJ's inadequate and conclusory step three finding." ECF No. 17, at 2. *See Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013); *Fox v. Colvin*, No. 14-2237, 2015 WL 9204287 (4th Cir. Dec. 17, 2015). However, this case is distinguished from both *Radford* and *Fox*, because, here, the ALJ's finding that Claimant did not have an impairment under Listing 1.00 was not vague and conclusory. Rather, here, the ALJ specifically noted that Claimant "does not meet the manipulative deficits required for Listing 1.02" and went on to specifically explain this conclusion through references to Claimant's medical record. Although he did not reject Listing 1.07 by name, as he did for Listing 1.02, the manipulative criteria required to meet Listing 1.02 are the same as those required for a determination of impairment under Listing 1.07. Additionally, the ALJ's decision regarding the applicability of Listing 1.00 is not "devoid of reasoning," nor did the ALJ "fail[] to apply the requirements of the listings to the medical record." *Radford*, 734 F.3d at 295. Rather, the ALJ applied Claimant's impairments to the relevant listing, Listing 1.00, and found that Claimant did not satisfy the listing. As such, this case is distinguished from *Radford* and *Fox*, and any 'error' made by the ALJ in not rejecting Listing 1.07 by name is harmless.

Magistrate Judge specifically indicate this. The Magistrate Judge included this description of Claimant's left wrist injuries in his decision:

> Claimant wrecked his motorcycle ("dirt bike") on May 1, 2006, and broke his left wrist. (Tr. at 150, 233.) The x-rays of his left wrist revealed an intra-articular fracture involving the distal left radius, an ulnar styloid fracture, and minimal radial displacement of the distal radial component. (Tr. at 151, 234.) He underwent closed reduction and screw fixation. (Tr. at 152, 156, 235, 239.) Dr. Hanington noted that Claimant was 'doing well' postoperatively. (Tr. at 156, 158, 239, 241.) On May 15, 2006, Dr. Hanington noted that Claimant presented with full digital motion and that he was intact neurovascularly. (Tr. at 158, 241). Repeat x-rays on May 8, 2006, revealed a comminuted intra-articular fracture involving the distal left radius that was fixated with place and screw fixation. (Tr. at 157, 240). It was noted that the fracture fragments were in good apposition and that there was an ulnar styloid fracture present. (Id.) On May 26, 2006, Dr. Hanington noted that Claimant bruised the left wrist over the surgical site when he walked through the house without his splint and banged it on the counter. (Tr. at 159, 161, 242, 244). He presented with some soreness and swelling, but nothing significant and an x-ray confirmed that his plate remained in place, with no change in position or alignment of his fracture fragments. (Tr. at 159–60, 242–43). . . .[Then on] May 31, 2006, . . . . he climbed a ladder over the weekend and caught himself with his left, broken wrist when a rung broke. (Tr. at 161, 244). Claimant presented with an inability to straighten his thumb and Dr. Hanington confirmed that he ruptured a tendon. (Tr. at 161–63, 244–46).
>
> On June 1, 2006, Claimant underwent an extensor pollicis tendon repair with a transposition. (Tr. at 163, 246). It was noted on June 9, 2006, that he was doing well and due to his history of noncompliance, Dr. Hanington place him in a thumb spica cast. (Tr. at 163–64, 246–47). On July 11, 2006, . . . . Dr. Hanington noted that his wound was well healed and intact. (Tr. at 164, 247). In an effort to protect his wrist and thumb, Dr. Hanington had made a custom forearm based Orthoplast thumb spica. (Id.) Claimant returned to Dr. Hanington on August 8, 2006, without his splint in place. (Tr. at 165, 248). The x-rays nevertheless showed good evidence of healing of the distal radius fracture, though the ulnar styloid avulsion fracture remained a fibrous union. (Tr. at 165–66, 248–49). On physical exam, Dr. Hanington observed that Claimant's thumb EPL repair was intact and functional, he had full distal flexion, was able to move his thumb to the head of his fifth finger, was able to fully extend the IP joint, and was intact neurovascularly. (Tr. at 165, 248). He noted that Claimant was 'doing relatively well in spite of himself.' (Id.) Claimant was directed to continue to wear his splint for two weeks in public, but could remove it when sleeping or watching television. (Id.) . . . .
>
> By September 6, 2006, Claimant was doing very well and had excellent range of motion. (Tr. at 167, 250). It was noted that thumb range of motion had excellent

>extension, he was non-tender, and neurovascularly his was intact. (<u>Id.</u>) Dr. Hanington noted that Claimant had no limitation. (<u>Id.</u>)

ECF No 15, at 4–5; *See also* ECF No. 9. As such, it is clear that Claimant has no limitation in his left wrist. These facts are not disputed by the Claimant. Additionally, there is no other evidence in the record to suggest that Claimant lacks functional use of his left wrist.

The Magistrate Judge recommends remand to resolve the issue of "whether Claimant was under continued surgical management for the condition directed toward restoration." ECF No. 15, at 19. This recommendation is unwarranted, however, because there is substantial evidence, as indicated supra, that Claimant does not lack functional use in his left wrist, which is a requisite to finding an impairment under Listing 1.07. *See* S*purlock,* 2013 WL 841474, at *22 ("Remand of a procedurally deficient decision is not necessary absent a showing that the [complainant] had been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.")(internal citations omitted).

As such, the Court finds that the ALJ did consider Claimant's left wrist impairment and that the denial of Claimant's benefits was supported by substantial evidence. Further, even if the ALJ's finding lacked specific articulation regarding Listing 1.07, this error is harmless and does not require remand.

## IV. Conclusion

For the reasons explained above, the Court **GRANTS** Defendant Commissioner's objection (ECF No. 16) and **ACCEPTS** and **INCORPORATES in part** the PF&R of the Magistrate Judge to the extent it is not inconsistent with this opinion. (ECF No. 15). Therefore, the Court **GRANTS** the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13),

**DENIES** the like Motion of Claimant (ECF No. 11), and **DISMISSES with prejudice** Claimant's Complaint (ECF No. 2).

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to Magistrate Judge Aboulhosn, counsel of record and any unrepresented parties.

ENTER: March 24, 2016

_____
ROBERT C. CHAMBERS, CHIEF JUDGE